

JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BRANDON CALLIER, | § § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | EP22CV0016 |
| CREDIBLE SOLUTIONS, LLC a Florida Limited Liability Company, **ANDREW TREXLER, JESSICA MARIE QUIAMBAO, CESAR GUERRERO,** and **NATHANAEL ELLIOTT** | | |
| Defendants. | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. The Plaintiff is BRANDON CALLIER, a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant CREDIBLE SOLUTIONS, LLC ("Credible") is a limited liability company organized and existing under the laws of Florida and can be served via registered agent Andrew Trexler, 404 Majorca Avenue, Altamonte Springs, Florida 32714.

3. Defendant ANDREW TREXLER ("Trexler") is a natural person, resident of Florida, managing officer of Credible Solutions, LLC and can be served at 404 Majorca Avenue, Altamonte Springs, Florida 32714.

4. Defendant JESSICA MARIE QUIAMBAO ("Quiambao") is a natural person, resident of Florida, managing partner of Credible Solutions, LLC and can be served at 6064 Bent Pine Drive, Apartment

1

3811, Orlando, Florida 32703.

5. Defendant CESAR ALBERTO GUERRORO ("Guerrero") is a natural person, resident of Florida, managing officer of Credible Solutions, LLC and can be served at 1040 Abernathy Lane, Apartment 310, Apopka, Florida 32703.

6. Defendant NATHANAEL G. ELLIOTT ("Elliott") is a natural person, resident of Florida, managing officer of Credible Solutions, LLC and can be served at 1040 Abernathy Lane, Apartment 310, Apopka, Florida 32703.

## JURISDICTION AND VENUE

7. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

8. Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

9. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

10. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the

above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held

vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

24. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

25. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

26. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17,

5

may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

27. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

28. Plaintiff has been on the Do-Not-Call Registry since December 2007 and at all time relevant to the Complaint.

29. Plaintiff requested a copy of the Defendants internal do not call policy and was not given a copy.

30. Plaintiff has had his personal information sold to "debt relief" companies by telemarketing lead generators. As a result, Plaintiff has been besieged with at least 600 phone calls over the past three months from "debt relief" companies using both prerecorded voice messages and direct dialing technology.

31. Plaintiff has asked to not be called numerous times and has been cursed at, physically threatened, harassed and stalked by "Debt relief" companies. As a result, Plaintiff has had to pretend to be interested in debt relief in order to find out who has been harassing Plaintiff.

32. Defendants Credible, Trexler, Quiambao, Guerrero, and Elliot collectively "Defendants" are engaged in "Debt Relief" of credit cards. The services marketed to Plaintiff Callier on the phone and the contract sent to Plaintiff Callier via email were for credit card "Debt Relief" services.

33. Defendants made false and misleading promises to "eliminate" Plaintiff's credit card debts through a "Debt validation" process.

34. Plaintiff was called at least seven (7) times over two days by the Defendants. Plaintiff did not have a pre-existing relationship with Defendants nor did Plaintiff ever give the Defendants permission to call him at any time.

35. The Federal Trade Commission says

"Debt relief service scams target consumers with significant credit card debt by falsely promising to negotiate with their creditors to settle otherwise reduce consumers' repayment obligations. These operations often charge cash-strapped consumers a large up-front fee, but then fail to help them settle or lower their debts – if they provide any service at all. Some debt relief scams even trout their services using automated "robocalls" to consumers on the Do-Not-Call List." Debt Relief and Cred https://www.ftc.gov/news-events/media-resources/consumer-finance/debt-relief-credit-repair-scamsit Repair Scams | Federal Trade Commission (ftc.gov)

36. The Federal Trade Commission has filed numerous lawsuits in an attempt to combat the proliferation of "Debt Relief" companies committing fraud against American citizens. Numerous states have also begun passing laws to combat this fraud.

37. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the elimination of his credit card debts.

38. Defendants violated the Tex. Bus. and Com. Code and committed a deceptive trade practice when it promised to "eliminate" Plaintiff's debt and attempted to collect money upfront in advance of services rendered and earned.

39. Defendants committed fraud and a deceptive trade practice by requiring payment in advance of the elimination of their clients debts.

40. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

41. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes and ethical practices for the solicitation of legal services.

42. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the

7

unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

43. Plaintiff never consented to receive the calls alleged herein.

44. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

45. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

46. No emergency necessitated the calls.

47. None of the Defendants ever sent Mr. Callier any do-not-call policy.

48. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls,

49. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

50. Defendants place the following calls to Plaintiff:

| Callier ID | Date | Time |
|---|---|---|
| 800-257-7322 | 9/9/2021 | 11:17 AM |
| 800-257-7322 | 9/9/2021 | 9:43 AM |
| 800-257-7322 | 9/8/2021 | 4:08 PM |
| 800-257-7322 | 9/8/2021 | 2:26 PM |
| 800-257-7322 | 9/8/2021 | 12:49 PM |
| 800-257-7322 | 9/8/2021 | 12:48 PM |
| 800-257-7322 | 9/8/2021 | 12:38 PM |
| 321-972-6483 | 11/1/2021 | 12:57PM |
| 321-972-6483 | 11/2/2021 | 11:07AM |
| 321-972-6483 | 11/5/2021 | 1:47PM |
| 321-972-6483 | 1/6/2021 | 11:10AM |

## DEFENDANTS TREXLER, QUIAMBAO, GUERRERO, AND ELLIOTT ARE PERSONALLY LIABLE

51. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

52. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where ethe defendant was the 'guiding spirit' behind the wrongful conduct.... or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

53. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

54. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

55. Satyasheel assisted King developing the business model and overseeing the day-to-day operations of Debt Dissolution.

56. Trexler, Quiambao, Guerrero, and Elliott as the principal owners and operators of Credible controlled the day-to-day operations of Credible and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit their "debt elimination" services for monetary gain.

57. Trexler, Quiambao, Guerrero, and Elliott have instructed their employees to make unsolicited phone calls to sell "debt elimination" services. These solicitations originate through unsolicited phone calls to prospective solicitors without their knowledge or consent of the phone calls.

58. Trexler, Quiambao, Guerrero and Elliott approved the telemarketing scripts, signed the contracts with the attorneys on whose behalf they solicit, pay commissions for the illegal behavior, and direct the illegal calls to be made for their financial benefit.

59. Trexler, Quiambao, Guerrero, and Elliott promise to eliminate the valid debts of consumers with little to no impact to their credit scores. The Federal Trade Commission considers this practice to be fraud. From the FTC website:

> "Debt relief service scams target consumers with significant credit card debt by falsely promising to negotiate with their creditors to settle or otherwise reduce consumers' repayment obligations. These operations often charge cash-strapped consumers a large up-front fee, but then fail to help them settle or lower their debts – if they provide any service at all. Some debt relief scams even tout their services using automated "robocalls" to consumers on the Do-Not-Call List.
>
> The FTC has brought scores of law enforcement actions against these bogus credit-related services, and the agency has partnered with the states to bring hundreds of additional lawsuits. Further, in 2010, the FTC amended its Telemarketing Sales Rule to protect consumers seeking debt relief services, like debt settlement or credit counseling. The Rule prohibits for-profit companies that sell these services over the telephone from charging a fee before they actually settle or reduce a consumer's debt. It also prohibits debt relief providers from making misrepresentations and requires that they disclose key information that consumers need in

evaluating these services." Debt Relief and Credit Repair Scams | Federal Trade Commission (ftc.gov)

60. Trexler, Quiambao, Guerrero, and Elliott knowingly and willfully ignore the law. They solicit debt elimination services and collects money upfront before any services are performed or any debts are forgiven. The violations are the direct result of the instructions Trexler, Quiambao, Guerrero, and Elliott have given to his agents, employees, solicitors, salespersons, and others that carry out their schemes.

61. Trexler, Quiambao, Guerrero, and Elliott are not merely bystanders. They are the masterminds that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

62. Defendants Trexler, Quiambao, Guerrero, and Elliott are well aware their conducted violates the TCPA and Tex. DPTA and refuse to alter their behavior. Trexler, Quiambao, Guerrero and Elliott are the sole owners of Defendant Credible and the only persons with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Trexler, Quiambao, Guerrero, and Elliott continue to break the law with their eyes and pocketbooks wide open.

63. Defendants Trexler, Quiambao, Guerrero, and Elliott have operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Credible that constitutes a common enterprise.

64. Defendants Trexler, Quiambao, Guerrero and Elliott should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

65. Defendants Trexler, Quiambao, Guerrero and Elliott should be held liable because to do

otherwise would simply allow the individuals to simply dissolve Credible, set up a new corporation, and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

66. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

67. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

68. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

69. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

70. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, more frequent cell phone charging and decreased enjoyment of Plaintiff's cell phone.

- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

### The Plaintiff's cell phone is a residential number

71. The calls were to the Plaintiff's cellular phone 915-383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code § 302.101

72. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

73. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

3.     Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.     Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.     Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

### (Against Debt Dissolution, King and Satyasheel)

6.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Mr. Callier's cellular telephone number without his prior express written consent.

8.     Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.101**.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the defendants jointly and severally as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for at least 11 calls;

E.   An award of $5,000 per call in statutory damages arising from violations of the Texas Business and Commerce code 302.101;

F.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.   An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity;

H.   Such further relief as the Court deems necessary, just, and proper.

January 6, 2022                                    Respectfully Submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604